May it please the Court. Good morning, Your Honors. My name is Christopher Krupp for the Appellants. The issue on appeal is whether the Bureau of Land Management violated the National Environmental Policy Act by failing to evaluate a reasonable alternative to its desert solar program. Your Honors, the alternative was not only reasonable, but pragmatic. It was to direct utility-scale solar development onto disturbed or degraded lands rather than onto the largely undisturbed lands that were relied on by BLM's preferred program. This alternative was suggested... This is a programmatic EIS, right? That is correct, Your Honors. It does include, when they do the site-specific EISs, there is disturbed land included in the... among the land that's covered by the programmatic EIS, right? There are disturbed lands that are part of the area that was analyzed in the programmatic EIS, but the agency in the programmatic EIS did not analyze the alternative of focusing the solar... Exclusively on... Correct, or even as a priority prior to developing the other undisturbed lands. But nothing precludes having specific programs located on disturbed lands. Nothing precludes it, but this was the programmatic EIS, so it sets the policy for all the individual site-specific plants that will be permitted after it. Well, the agency says that there's no clear and well-established definition of even what that is. But that's not true, Your Honor. Elsewhere in the programmatic EIS, it came up with a definition. And in those same two paragraphs where they said there's not a clear definition, it said that they had, in fact, identified some disturbed lands within those solar zones, so they must have relied on some definition. Well, the idea that you have no idea as to what might be encompassed by that doesn't tell you that an agency can't look at something and say, well, whatever the definition is, this land is clearly covered. That is true, Your Honor. But another instance or another fact that goes against their position that they didn't have any definition of this was that the state office of Arizona's BLM had actually started a program to identify disturbed and degraded lands that was exactly the sort of program that the national BLM office said was not a reasonable alternative for the six-state program. And one of the states was Arizona, which was in the six-state coverage area of this programmatic EIS. This alternative was suggested not only by the three conservation organizations here but also by the Environmental Protection Agency, which was a federal cooperating agency for this program. Early in the development of the Desert Solar Program, EPA made the clear case for a disturbed lands alternative. That was that identifying and utilizing the degraded and contaminated public lands first was clearly within the purpose and need of the Desert Solar Program, which was to direct... Right. I mean, we understand what the... But it's clear the agency took that into account. It's not a situation where this was proposed and they didn't consider it. We have cases like that. This is not one of those cases. They did not consider it as an alternative. They said that they would consider the use of disturbed lands in the variance areas and in future in solar zones. And they said that there were some disturbed lands within the 17 zones they identified, but the record doesn't... The programmatic EIS contains no map or inventory of what those lands are. So we don't know if it was 1% of the lands, 50% of the lands, 90% of the lands. There's just no way of knowing that they evaluated disturbed lands as a reasonable alternative. I will address why the disturbed lands alternative was well within the nature and scope of the program. I will discuss how the two paragraphs that BLM used relied on specious reasoning and therefore were not the hard look at the issue that NEPA required. I'm sorry. Let me just go back to the last question. I'm not sure I understood. I don't remember. Did the EPA suggest that this be an alternative? Yes, they did. And there were three opportunities to comment. In its initial comment on the draft programmatic EIS, it suggested that an alternative of disturbed... the use of disturbed and degraded lands be evaluated. This was from the EPA? Yes. Did anybody else suggest that disturbed lands? The three conservation organizations did, Your Honor, and I can't say whether other organizations did either. And what was EPA's response after BLM came up with this proposal? BLM responded that they thought that... The question is EPA. What did EPA respond? EPA responded by saying that they identified 132 sites in California alone that were greater than 100 acres, and they thought after an initial evaluation were suitable for utility-scale solar development. Okay. Did EPA continue to protest the way that BLM decided to handle the disturbed lands proposal? I would say that they did, Your Honor, by the fact that they kept suggesting that disturbed lands should receive greater evaluation. Now, is the principal EPA response the August 27, 2012 letter? Excuse me, Your Honor? Is EPA's principal response after this the August 27, 2012 letter? Yes. The comments in the final programmatic... The one that says we appreciate BLM's stated intention to give our preference to proposed projects, blah, blah, blah. That doesn't seem to be much of a protest from EPA, does it? No. They also state that they think that the disturbed lands alternative should receive further evaluation. Okay. Where does it say that? Your Honor, I'm sorry, I don't have that letter in front of me. Do you have the ERs? Yes, I do, Your Honor. That says ER 83 and 84. The paragraph I'm reading from is the first full paragraph on page 84. Yes, the paragraph beginning, we appreciate BLM's stated intention. Yeah. Yes. So this was during the final programmatic EIS, and they noted that there were 132 sites in California that would be appropriate for renewable energy. Okay. And BLM said they would give preference to that, didn't they? They said they would give preference, but there's nothing in the record that states what preference means. There's the preferred program gives financial incentives and streamlined permitting to lands within the solar zones, and this just says we'll give a preference in the future. That's not the. . . Okay. This doesn't look like a very strong. . . I think my original question was this doesn't look like a very strong protest from EPA. It looks like EPA is pleased with what BLM has promised them. I think the fact that they addressed it in each of their comment letters suggests that although they appreciated BLM's work, they still believed that. . . And we're supposed to read that between the lines here? The legal standard is whether the alternative was reasonable. The fact that NEPA. . . Excuse me. But it's been addressed, and BLM says we'll give preference to sites that are on disturbed lands. Yes, Your Honor, but saying that they will do that is not the standard that NEPA requires, which is an evaluation of all reasonable alternatives. To say they will consider it in the future was not an evaluation of this at the programmatic level. And the importance of evaluating at the programmatic level is that that sets the policy for all the individual permitting of solar plants in the future. So if they say that this was not a reasonable alternative, it largely forecloses the possibility that disturbed lands will be used in the future. It forecloses it? Yes. How is that? I don't see how it forecloses it when BLM says we'll give preference to people who come with proposals to put it on disturbed lands. Well, in the initial cut at the 17 solar zones, that creates financial incentives and streamlines permitting authority only within those zones. Okay. Are there disturbed lands within those zones? BLM says there is, but it doesn't identify what they are. Okay, but Arizona has helped them. And EPA says there's 132 disturbed sites in California on BLM lands, so we're well down the road, aren't we? We've got some things identified. We don't know. The record does not show that any of those 132 sites were within the solar zones that BLM identified. So we don't know whether BLM is... Do you know where these 132 sites are? I do not, Your Honor. Has anybody identified them? Somebody has. Somebody has. The EPA has, and I believe that they're on an EPA website. Okay. It shouldn't be too difficult, then, to match those up. No. Have you tried matching any of those up? I can provide those sites. Well, I don't want to match them up. I was asking if you would match them up. I have not, Your Honor. Okay. The government argues that the Energy Policy Act and the executive and secretarial orders did not require BLM to focus on the use of disturbed lands. This is a misplaced argument because it's NEPA, not those directives, that require BLM to evaluate the alternative. There was certainly nothing in those directives. Well, NEPA says you should consider alternatives, but there are all sorts of alternatives out there. There has to be some policy that alternatives serve. You could say, well, we'll only consider alternatives north of this latitude, but what sense would that make? I mean, that would be an alternative, but unless the alternative is driven by some sort of policy or some sort of directive, then it doesn't make any sense to have the alternative. Yes, Your Honor. The standard is whether the alternative is reasonable, and the courts look to the nature and scope of the proposal in determining the range of reasonable alternatives. I'm sorry. When you say the alternatives, are they required to consider all reasonable alternatives? All reasonable alternatives, Your Honor. Every single one? I'm a little baffled because that could be sort of an infinite set. That's true, Your Honor, but reasonable alternatives would be alternatives that are distinct enough to evaluate the impacts and the comparative benefits of different approaches to a proposed action. Well, if you said, you know, all alternatives in counties whose name starts with a vowel, that would be easily identifiable? It would make no sense at all. I would argue it wouldn't be a reasonable alternative because it's completely random as to what the public lands would be in the county, starting with any particular letter. So the standard is, is the alternative reasonable? And to determine what reasonable is, we have to look to the purpose and need of the program. So the initial requirement is that the agency consider all reasonable requirements, and then we're to judge that to see whether the agency has acted in an arbitrary and capricious fashion. So we have an arbitrary and capricious overlay on whether the agency has acted reasonably. Correct, Your Honor. Okay, so we're not reviewing de novo whether we think this is a reasonable alternative. Correct, Your Honor. NEPA is a procedural statute. And so why did the agency act arbitrary and capriciously when it considered this, acknowledged it, addressed it? Because, Your Honor, the agency did not address it. It gave two paragraphs to its entire discussion, and this was an eight-volume, 2,400-page record for the programmatic EIS. I'm sorry, are we counting words now? Is there sort of a minimum number of words? I don't know that there's a minimum number of words, but I would suggest that two paragraphs in a 2,400-page document is not a rigorous exploration of an alternative. Some of the best briefs I've seen haven't been much longer than that. I believe that, Your Honor. Not in this case. Anyway, you've got a minute and a half left. Do you want to save that for rebuttal? Yes, Your Honor. Thank you. May it please the Court, I'm David Shilton, representing the U.S. Bureau of Land Management. I think the question is whether it was arbitrary and capricious for the Bureau in responding to the comments that the plaintiff group made here to say that creating an alternative just based on disturbed lands is not something we're required by NEPA to do, and one reason is that there is no clear definition of what are disturbed lands. There's no land management. I want to make sure I understand this. So what BLM was working at was trying to figure out whether it could get a definition of disturbed lands. What Arizona did was actually identify the disturbed lands, that is, it listed them. That's a functional definition. It is. But Arizona listed what it considered disturbed and non-conflict lands is how they described it. So it's a broader category than just disturbed lands. That actually sounds like a maybe more restricted category. Well, it is. That is, it wasn't just disturbed lands, but it was disturbed lands also in which there was no conflict over them. Exactly. And so what BLM did here was focus on the lack of conflicts. They took a laundry list, really, of 30 criteria that would exclude lands from being appropriate for solar development. Are they areas where there's critical habitat? Are they areas with wilderness values? Took all of those things and said those are unsuitable lands, and then they looked at a number of criteria that made land suitable. Is there transmission capacity? Is it reasonably flat? And based on all of those, they found that this 265,000 acres in various parcels in six states were the most suitable for solar energy development. They didn't do it on the basis of disturbed or non-disturbed, but there's nothing that requires them to analyze it under that rubric. And in fact, it wouldn't make a lot of sense to do so, and here's why. Disturbed lands may, you know, you might have all-wheel drive vehicle tracks on a piece of land that still is good habitat for desert tortoise. And so even though it's disturbed, it may be unsuitable. On the other hand, you may have, you know, undisturbed land that's very flat, has no features of note, no biological value. That might be very good to put in a solar energy zone. So the whole concept of disturbed lands doesn't line up very well with an agency that's trying to find the most suitable lands for future development. Now, of course, as BLM said, it will consider the disturbed lands concept as it goes forward, and EPA was satisfied with its answer that when it looks in the future. I've sort of listened to your narrative, but I'm not sure I understand it. I mean, the agency has a series of criteria, right? If it's critical habitat, it can't and wouldn't put it there, right? Right, yeah. And if it's mountainous, it's not suitable. And if it's not near other land that will support transmission lines, it's not suitable. Right? It's one of those things, right? Why can't, you know, what is inconsistent about saying, in addition, we will have a criterion that it be land that's disturbed? Now, obviously, there may be disturbed land that doesn't, is not suitable for one of those other reasons. But why couldn't it say, instead of having 286,000 acres or whatever the number is, we will limit it to, we have an alternative that is limited to land that meets all those other criteria. In addition, it's also been disturbed, has tracks on it or, you know, whatever disturbed means. What's implausible, inconsistent, unsuitable about that? Well, first of all, I don't think it would accomplish the goal of environmental protection that was part of this because the ‑‑ You must be a lawyer because instead of answering the question I asked, you're going to answer some other question. But I would insist on answering the question I asked, whether it would make sense. I'm not asking that question. I understand there may be reasons not to do it. But I heard you saying something else. I heard you saying it would be inconsistent or impossible or implausible or, you know, somehow at cross purposes with those other requirements. That's what I heard you saying. And my question is, why couldn't they just simply add one more requirement to those other requirements and say, of all the lands that meets all the other requirements, sustainability, flat, I mean, flatness, lack of habitat, you know, all those things. Plus, it's got to be disturbed. That would give you a smaller area. Maybe the answer is that that would be too little. I don't know. But what is inconsistent about that? How is that not plausible? I think one of the problems would be that there would be too little land. How do we know? I mean, if you don't study it, there's certainly nothing in these documents that says there's too little of that land. I mean, if they said that and that was spoiled by the record, then there wouldn't be an issue. But there's nothing like that, right? And they don't offer it as an alternative and then reject it because there's not enough of it, enough land like that, right? Right. BLM does not have an inventory. But that's not a good answer. You want to try for another answer? So because it doesn't have an inventory, it would have to go out and search and try and determine which lands are disturbed, which aren't. And that involves some very difficult questions. For instance, land that has cheatgrass on it because there's been wildfires that are a human cause, does that count as disturbed lands? There's no criteria. Let me just make sure I understand your answer here because you are answering the question, but just let me understand. So the answer is it's hard work to figure out what it is. It's not that it's inconsistent or, you know, across purposes, but it would just be very difficult and would require a lot more work and time. I mean, that's a perfectly good answer. Is that your answer? That's a big part of it. The rule of reason governs, and there are dozens of ways you could say— So how do we know that that—I mean, you said that. How do we know that that is a correct answer? How do we know that it is difficult? I mean, you sort of make a plausible case that that's the case, but other than common sense, do you have anything in the record that says, hey, listen, we really—you know, this is—take too long. We just don't have the resources to do it. We can't identify this land. Is there— No, but I think— I mean, if you put it as—if you offer it as an alternative, if you consider it as an alternative, one answer could be, why, this is a great alternative. But it would require two additional years and 75,000 hours of manpower to identify, and, you know, it's not worth the cost. I mean, that's an answer. Right. But that answer is not in this EIS, right? That's right. BLM has— This is something you made up. Right. BLM had to respond to— Something you made up. Well, I think you can say that it flows from the agency's statement that there is no accepted definition of disturbed lands. I mean, I think that concept is that, you know, we have 30 different categories where we have definitions that come from regulation or statute that we can deal with, and we have inventories of wilderness lands and so forth. We don't have anything on disturbed lands because that's just not a recognized concept. So, yes, it's theoretically possible that they could go out and do a new inventory of disturbed versus non-disturbed lands, but under the rule of reason, I think you can't impose that duty on BLM when there's no statute or regulation that says they have to look at it in terms of disturbed or non-disturbed lands. This is just a concept that others have come up with. Now, BLM is certainly willing to look at Arizona's efforts, at EPA's efforts, and BLM has said that it will give a preference to developers who come forward with proposals that include disturbed lands. So, you know, there's a common-sense sort of definition of disturbed lands, and BLM will give that preference, and that certainly satisfied EPA. EPA never suggested that BLM had to build an entire alternative, construct an alternative based on disturbed lands. They said, give a harder look at it and give it a preference, and that's what BLM decided to do. And so EPA was satisfied with that. So I think it was reasonable for BLM to look at this problem in terms of suitability. What was suitable land to choose for these solar energy zones? And in that process, they looked at a whole range of factors, and ultimately the decision was not arbitrary and capricious. Unless the Court has other questions. Thank you. I think you have a minute and a half or so. Thank you, Your Honors. The government just said that BLM needs to take an inventory of disturbed lands before it could proceed with this type of alternative. Well, that is exactly what EPA was offering when it suggested that the BLM give further examination or further evaluation of this alternative. Regarding the fact that BLM failed to provide a rationale for not evaluating this alternative, 40 CFR 1502.14a demands that an agency either rigorously explore and objectively evaluate all reasonable alternatives, or for those alternatives that are not studied in detail, to briefly discuss the reasons that they were eliminated from further study. BLM did not do that in this case. They devoted two paragraphs in this large document to discussing why they didn't. But they also said they'd give a preference to site-specific plans that use disturbed lands. I mean, that's significant, isn't it? The issue there, Your Honor, is that it's going to be the developers that come to BLM asking to have specific lands developed. The question was, is it significant? I'm sorry. Could you repeat the question, Your Honor? You said, in giving preference to disturbed lands. Isn't that significant? It is not significant, Your Honor, in that the standard of NEPA standard is an evaluation of all reasonable alternatives, and future preference does not evaluate the benefits, the comparative benefits, of a program that focuses solar development on disturbed lands. And giving preference later would only provide an evaluation of the alternative for 1,000 or 2,000 acres of land that were forested. It's not a specific desert solar plant, utility-scale plant. But that happens every time somebody makes a proposal. Correct, Your Honor. So the preference kicks in every time. Certainly. However, it would make more sense to evaluate whether this is a reasonable alternative at the programmatic phase. But that's not the test for us. The question is not whether it makes more sense. The question is whether it's arbitrary or capricious for it to have done it the way the agency did. That's the test for us, right? That's correct. Because it was a reasonable alternative to consider at the programmatic phase, it was arbitrary and capricious not to consider it. Okay. I think we understand the position. Thank you. Thank you. The case is argued.
judges: Kozinski, Bybee, Walter